**TOMPKINS, McGUIRE, WACHENFELD & BARRY LLP**
Four Gateway Center, 5th Floor
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-3000
wmcguire@tompkinsmcguire.com
rulsamer@tompkinsmcguire.com
Attorneys for Defendants, National Union Fire Insurance Company of Pittsburgh, Pa. and
American International Group, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

CIVIL ACTION NO.

**<u>ELECTRONICALLY FILED</u>**

ROBERT ZODDA, Administrator of the
ESTATE OF DANIEL DANIELS,

        Plaintiff,

   v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,
AMERICAN INTERNATIONAL GROUP,
INC., d/b/a AIG INSURANCE TRUST, FOR
THE ACCOUNT OF HEALTHEXTRAS,
HEALTHEXTRAS, INC., HEALTH
EXTRAS, LLC,

        Defendants.

**NOTICE OF REMOVAL**

Defendants, National Union Fire Insurance Company of Pittsburgh, Pa. ("NUFIC") and

American International Group, Inc. ("AIG"), by this Notice of Removal, respectfully show:

**28 U.S.C. §1446**

1.      Plaintiff, Robert Zodda, the Administrator of the Estate of Daniel Daniels, has filed a civil action against defendants in the Superior Court of New Jersey, Law Division, Bergen County ("the State Court action"), by means of a Complaint.  Filed on or about November 7, 2013, the State Court action has been assigned Docket Number BER-L-008867-13.

2.      This Notice of Removal is being filed with the United States District Court for the District of New Jersey because it is the court for the district and division in which the State Court action is pending.  28 U.S.C. §1446(a); 28 U.S.C. §1441(a).

3.      This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.  28 U.S.C. §1446(a).

4.      Annexed hereto as **Exhibit A** is a copy of the Complaint in the State Court action ("11/07/13 Complaint") in addition to the Civil Case Information Statement ("CIS") which were served on NUFIC and AIG.

5.      The 11/07/13 Complaint, CIS and Summons were served on NUFIC and AIG on November 25, 2013.  This Notice of Removal is being filed with this Clerk of the United States District Court for the District of New Jersey in a timely fashion, within thirty (30) days after the service of the Complaint, CIS and Summons on NUFIC and AIG.  28 U.S.C. §1446(b); Fed.R.Civ.P. 6(a).

6.  ·    Annexed hereto as **Exhibit B** is the Notice of Removal of Action to the United States District Court for the District of New Jersey which will be promptly filed in the State Court action with the Deputy Clerk, New Jersey Superior Court, Bergen County, after the filing

of this Notice of Removal with the Clerk of the United States District Court for the District of New Jersey. 28 U.S.C. §1446(d).

     7.     Annexed hereto as **Exhibit C** is the Notice of Removal of Action to the United States District Court for the District of New Jersey which will be served on counsel for plaintiff immediately following the filing of this Notice of Removal with the Clerk of the United States District Court for the District of New Jersey. 28 U.S.C. §1446(d).

## 28 U.S.C. §1441

     8.     The 11/07/13 Complaint alleges that plaintiff, Robert Zodda, has been appointed the Administrator for the Estate of Daniel Daniels, which is a New Jersey estate matter pending in the New Jersey Superior Court, Bergen County, Chancery Division, Probate Part, Docket Number 2012-4519. (See 11/07/13 Complaint, ¶2.)

     9.     Defendant National Union Fire Insurance Company of Pittsburgh, Pa. ("NUFIC") is incorporated in Pennsylvania with its principal place of business in New York.

     10.     Defendant American International Group, Inc. ("AIG") is incorporated in Delaware with its principal place of business in New York.

     11.     Defendant HealthExtras, Inc., is incorporated in Delaware with its principal place of business in Maryland.  HealthExtras, Inc., has advised NUFIC and AIG of its consent to this application to remove the State Court action.

12.    Defendant HealthExtras, LLC, is incorporated in Delaware with its principal place of business in Maryland.  It is the understanding of NUFIC and AIG that HealthExtras, LLC, has not been served with the 11/07/13 Complaint.

13.    Though not required under New Jersey's Court Rules, the 11/07/13 Complaint clearly states that the dispute centers on the denial of a $1 million lump sum payment under an accident disability insurance policy.  Plaintiff also seeks punitive damages and an award of treble damages under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq.  The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  (See 11/07/13 Complaint, ¶¶46, 57, 83, Prayer for Relief.) 28 U.S.C. §1441(b); 28 U.S.C. §1332(a).

14.    None of the defendants to the State Court action, as identified in the 11/07/13 Complaint, are citizens of New Jersey.  The United States District Court for the District of New Jersey has original jurisdiction allowing for removal of the State Court action based on the diversity of citizenship of the parties.  28 U.S.C. §1441(b); 28 U.S.C. §1332(a).

15.    The State Court action is a civil suit of which District Courts of the United States have original jurisdiction; this Notice of Removal has been timely filed; all of the defendants upon whom the 11/07/13 Complaint has been served consent to the removal of this State Court action; and this Notice of Removal has been filed in the appropriate district.  28 U.S.C. §1331; 28 U.S.C. 1441(a); 28 U.S.C. §1441(b); 28 U.S.C. §1446(a); 28 U.S.C. §1446(b); 28 U.S.C. §1446(d); Fed.R.Civ.P. 6(a).

**WHEREFORE, PLEASE TAKE NOTICE** that this cause should proceed in the United

States District Court for the District of New Jersey as an action properly removed thereto.

**TOMPKINS McGUIRE WACHENFELD & BARRY LLP**
Attorneys for Defendants, National Union Fire Insurance Company
of Pittsburgh, Pa. and American International Group, Inc.

By: _____
William B. McGuire

Date: December 20, 2013

# Exhibit A



Daniel B. Shapiro, Esq.
Law Office of Daniel B. Shapiro
101 Park Street
Montclair, New Jersey 07042
973-746-8662

| | |
|---|---|
| ROBERT ZODDA, Administrator of the ESTATE OF DANIEL DANIELS, | ) SUPERIOR COURT OF NEW JERSEY<br>) BERGEN COUNTY<br>) LAW DIVISION |
| Plaintiff, | ) |
| vs. | ) DOCKET NO.: |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., AMERICAN INTERNATIONAL GROUP, INC., d/b/a AIG INSURANCE TRUST, FOR THE ACCOUNT OF HEALTHEXTRAS, HEALTHEXTRAS, INC., HEALTHEXTRAS, LLC | ) CIVIL ACTION<br>)<br>) COMPLAINT |
| Defendants. | ) |

NOW COMES the Plaintiff, Robert Zodda, Administrator of the Estate of Daniel Daniels by and through undersigned counsel and states the following:

## I. STATEMENT OF THE CASE

1.      This Complaint against Defendants arises from the wrongful denial of the claim of the Estate of Daniel Daniels for disability benefits, as well as the illegal marketing and sale of an accident disability insurance policy.  The causes of action include: (i) Breach of Contract; (ii) Equitable Reformation; (iii) Insurance Bad Faith; (iv) Violations of the New Jersey Consumer Fraud Act; (v) Violation of the Duty of Good Faith and Fair Dealing; (vi)  Civil Conspiracy; and (vii) Punitive Damages.

## II. PARTIES

2.      Robert Zodda is the Administrator of the Estate of Daniel Daniels duly certified by the State of New Jersey, Bergen County Surrogate's Court, Docket No.: 2012-4519.

3.      Defendant National Union Fire Insurance Company of Pittsburgh, P.A., (hereinafter "National Union") was and is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and has done business at all relevant times in the State of New Jersey, with its principal office located at 175 Water Street, 18th Floor, New York, NY 10038 and with its registered agent located in Pennsylvania, namely, Corporation Service Company, 2595 Interstate Drive, Harrisburg, PA 17710. Defendant National Union was owned by American International Group, Inc. ("AIG") and now is a wholly owned subsidiary of Chartis U.S., Inc. Upon information and belief, Defendant National Union, at all times relevant to this action, was licensed as an insurance company and/or underwriter in the State of New Jersey and the United States of America.

4.      Defendant American International Group, Inc., d/b/a "AIG Group Insurance Trust, for the Account of HealthExtras", (hereinafter "AIG") is a corporation with its principal place of business located at 2 Peach Tree Hill Road, Livingston, New Jersey.  Defendant American International Group, Inc., d/b/a "AIG Group Insurance Trust, for the Account of HealthExtras", has conducted business at all relevant times in the State of New Jersey.

5.      Defendant HealthExtras, Inc., (hereinafter "HealthExtras") was and is a corporation organized and existing under the laws of the State of Delaware and has done business at all relevant times in the State of New Jersey, with its registered agent located in Delaware, namely, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

Defendant HealthExtras, Inc., has asserted that on October 1, 2008, it changed its name to Catalyst Health Solutions, Inc., and that therefore, it "no longer exists." However, despite these representations, HealthExtras, Inc., has and continues to conduct business under the name HealthExtras in New Jersey. Upon information and belief, Defendant HealthExtras, Inc., has never been licensed or authorized by the New Jersey Office of the Secretary of State or Department of Insurance to conduct business in the State of New Jersey.

6.      Defendant, HealthExtras, LLC (hereinafter both HelthExtras, Inc., and HealthExtras, LLC will be referred to as "HealthExtras") was and is a corporation organized and existing under the laws of the State of Delaware and has done business at all relevant times in the State of New Jersey, with its registered agent located in Delaware, namely, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801. HealthExtras, Inc., has and continues to conduct business under the name HealthExtras in New Jersey. Upon information and belief, Defendant HealthExtras, LLC, has never been licensed or authorized by the New Jersey Office of the Secretary of State or Department of Insurance to conduct business in the State of New Jersey.

### III. JURISDICTION AND VENUE

7.      This matter is governed by the law of the State of New Jersey and the United States of America. This matter is not governed by ERISA 29 U.S.C. § 1001, et seq.

8.      This Court has personal jurisdiction over the Defendants pursuant to N.J. CT. R. 4:4-4.

9.      Venue in this Court is properly laid pursuant to N.J. CT. R. 4:3-1(a)(4) and N.J. CT. R. 4:3-2(a), (b).

## IV. FACTS OF THE PLAINTIFF'S CLAIM
## FOR DISABILITY BENEFITS

10.     On February 28, 2009 Daniel Daniels fell, striking his head and suffering a massive cerebral hemorrhage, resulting in permanent brain damage.

11.     Due to the massive brain damage, Daniel Daniels suffered a permanent loss of speech, permanent inability to communicate, permanent inability to use his arms and legs, permanent loss of cognitive function, inability to swallow, and was for the remainder of his life unable to communicate or have any meaningful function whatsoever.

12.     From the date of the accident causing permanent brain damage on February 28, 2009, Daniel Daniels remained under constant institutional medical care, never returning home or to his family until he passed away on June 5, 2011 at the Bergen County Regional Medical Center in Paramus, New Jersey.

13.     In January 2013, the Estate of Daniel Daniels made a claim for disability benefits under Mr. Daniel's HealthExtras Accidental Permanent Disability Policy (policy # 9540-519) underwritten by the Defendant, National Union.

14.     Over eight months later, on October 24, 2013, National Union denied the claim insisting that although Mr. Daniels did suffer an injury by accident, his disability did not meet the definition of disability under the HealthExtras Accidental Permanent Disability Policy (policy # 9540-519).

## V. HISTORICAL BACKGROUND AND FACTUAL ALLEGATIONS
## OF THE DEFENDANTS' ILLEGAL ACTS

15.     In the late 1990s, the Defendant HealthExtras established strategic marketing relationships with six of the nation's largest VISA and Mastercard issuing banks for access to their

-4-

credit card and other customers to market a long term disability insurance product to persons in New Jersey and throughout the United States of America.

16.     Defendant HealthExtras initially engaged Reliance National Insurance Company to underwrite its disability coverage product and was aware that any underwriter would necessarily be required to comply with insurance regulation among the various fifty (50) states.

17.     Upon information and belief, at some time between 1999 and 2001, Daniel Daniels received marketing materials from Defendant HealthExtras, which were forwarded to him in mailings from his credit card issuer, Citibank.

18.     Prior to the issuance of the marketing materials, Defendant HealthExtras had retained and utilized the likeness of "Superman" actor, Christopher Reeve, to be the face of its marketing campaign after the famous actor had become paralyzed as a result of an equestrian accident, which was well documented in the national media.

19.     The HealthExtras benefit program touted and included in the "coverage" a One Million Dollar ($1,000,000.00) benefit in the event that Daniel Daniels became permanently disabled as a result of an accident.

20.     Daniel Daniels was not a sophisticated purchaser of insurance.

21.     Upon information and belief, some of the statements in the marketing material HealthExtras sent to Daniel Daniels indicated that:

    a.    "This program provides valuable protection in the event you become permanently totally disabled due to an accident."

    b.    "This HealthExtras Benefit Program provides you with a $1,000,000 tax-free cash payment if you're permanently disabled due to an accident."

    c.    "If an accident leaves you - the primary member - permanently disabled, you will receive a lump sum payment of $1,000,000."

    d.    "After 12 months of continuing and permanent disability caused by an

-5-

accident - including the inability to work - the primary member will receive a payment of $1,000,000."

e.     "You're covered with a $1,000,000 tax-free cash payment if you are permanently disabled as a result of an accident."

22.     Upon information and belief, Daniel Daniels purchased the HealthExtras Accidental Permanent Disability Policy and began paying premiums for it through Citibank credit card, which was typical of the HealthExtras marketing, sales and service program.

23.     The mail solicitation from Defendant HealthExtras constituted direct-to-consumer marketing material(s) intended to induce Daniel Daniels to purchase and retain the specified disability insurance.

24.     Defendant HealthExtras' written solicitation of Daniel Daniels was the typical HealthExtras mailing solicitation, offering this disability insurance to certain "targeted" credit card customers who held credit cards with several of the nation's largest VISA and Mastercard issuing banks.

25.     Daniel Daniels made payments via his Citibank credit card for accidental disability premiums from sometime in 1999-2001 through 2009 for the Accidental Disability Policy sold to him by the Defendant, HealthExtras.

26.     Daniel Daniels' HealthExtras Accidental Permanent Disability Policy was first underwritten by Federal Insurance Company, a member of the Chubb Group of Insurance Companies, a successor underwriter to Reliance National Insurance. Then, on January 1, 2005, the underwriter was changed again to Defendant, National Union. Defendant National Union approved and ratified all advertisements and representations made by HealthExtras to Daniel Daniels and sent additional correspondence to him making the same and similar representations.

-6-

27.   The Description of Coverage forwarded to Daniel Daniels specified that the coverage described thereunder was a "brief description of coverage available under policy series C11695DBG" and that "[i]f any conflict should arise between the contents of this Description of Coverage and the Master Policy SRG 9540519 or if any point is not covered herein, the terms and conditions of the Master Policy will govern in all cases."

28.   Daniel Daniels was not and has never been provided with a copy of policy series C11695DBG nor of Master Policy SRG 9540519. The policy summary of terms contains extremely restrictive exclusions and contradictory terms which intentionally renders the policy virtually worthless to purchasers.

29.   Upon information and belief, the New Jersey Department of Insurance has not approved either policy series C11695DBG nor Master Policy SRG 9540519 for sale to any eligible blanket groups in New Jersey or otherwise to any New Jersey consumers.

30.   The policy issued by Defendants to Daniel Daniels was not issued to a valid blanket group pursuant to N.J. Stat. Ann.  § 17B:27-32(a)(1)-(7), but instead was issued to Defendant American International Group, Inc., d/b/a "AIG Group Insurance Trust, for the Account of HealthExtras" a group that was and is ineligible pursuant to applicable New Jersey law.

31.   N.J. Stat. Ann. § 17B:27-32(a)(1)-(7) defines eligible blanket groups as follows:

(a)   Any policy or contract of insurance against death or injury resulting from accident or from accidental means which conforms with the description and complies with the requirements contained in one of the following paragraphs shall be deemed a blanket insurance policy.

(1)   A policy or contract issued to any railroad, steamship, motor bus or airplane carrier of passengers, which carrier shall be deemed the policyholder, covering a group defined as all persons who may

-7-

become such passengers and whereby such passengers shall be insured against loss or damage resulting from death or bodily injury either while, or as a result of, being such passengers.

A policy or contract covering accidental death or injury to individuals resulting from airline accidents may also be issued under which premiums are paid from funds of the airline and the benefits are payable to the airline or to a trust established for the purpose of funding payments to persons with claims against the airline by reason of the death or bodily injury of individuals.

(2)     A policy or contract issued in the name of any volunteer fire department, first aid or ambulance squad or volunteer police organization which shall be deemed the policyholder and covering all of the members of any such organization against loss from accidents resulting from hazards incidental to duties in connection with such organizations.

(3)     A policy or contract issued in the name of any established organization, whether incorporated or not, having community recognition and operating for the welfare of the community and not for profit which shall be deemed the policyholder and covering all volunteer workers who are members of the organization and who serve without pecuniary compensation against loss from accidents occurring while engaged in the actual performance of duties on behalf of such organization.

(4)     A policy or contract issued to any employer, who shall be deemed the policyholder, covering any group of employees defined by reference to exceptional hazards incident to such employment, insuring such employees against death or bodily injury resulting while or from being exposed to such exceptional hazards.

(5)     A policy or contract issued to a college, school, or other institution of learning or to the head or principal thereof, who or which shall be deemed the policyholder.

(6)     A policy or contract issued to and in the name of an incorporated or unincorporated association of persons having a common interest or calling, which association shall be deemed the policyholder, having not less than 50 members, covering all the members of such association, or if part or all of the premium is to be derived from funds contributed by the insured members and if the opportunity to take such insurance is offered to all eligible members,

-8-

then such policy must cover not less than 75% of any class or classes of members determined by conditions pertaining to membership in the association.

(7)     A policy or contract issued to insure any other substantially similar group approved by the commissioner as eligible for insurance under a blanket insurance policy or contract.

32.     The illegal group to whom the insurance product was sold consists solely of persons whose only commonality is that they have a credit card and were chosen by HealthExtras and others as a good marketing prospect for the policy. The group for which Daniel Daniels "members" are a part of was formed only for the purpose of obtaining insurance. Therefore, Daniel Daniels and other residents of the State of New Jersey who purchased HealthExtras policies are not individually or collectively within any of the seven permissible blanket groups of persons as contemplated by N.J. Stat. Ann. § 17B:27-32(a)(1)-(7). In fact, upon information and belief, the "members" are not even all customers of the same bank or credit card issuer.

33.     Accordingly, pursuant to New Jersey Law, the policy issued by the Defendants was illegal, could not have been approved to be sold to the purported "group" of persons by the New Jersey Department of Insurance, and therefore is in violation of against public policy and constitutes unlawful and deceptive trade practice, under the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 et seq.

34.     Moreover, by illegally selling the policy to a group that was not and could not be a legal blanket group, the Defendants breached their duty of good faith and fair dealing with Daniel Daniels, as a matter of law.

35.     Accordingly, the HealthExtras "policies," including the one sold to Daniel Daniels is illegal under New Jersey statutory law as the New Jersey policyholders or "members" as they are

referred to by the Defendants, do not fall within a lawful blanket group. The Plaintiff's "group" was formed only for and specifically for the purpose of obtaining insurance. The "group" is not a group at all, rather it is an illegal entity formed by the Defendants for the purpose of perpetrating the fraud described herein.

36.     Daniel Daniels was charged premiums for the illegal and illusory coverage provided by these Defendants.

37.     The purpose of the Defendants' noncompliance with the requirement that the group be "formed for the purposes other than obtaining insurance" was to avoid the policy being issued to an actual group of persons.  If the policy had been issued to an actual group of persons that was organized together for some purpose other than obtaining insurance, the policy, the advertised promises, the excessive premiums, and the broad, harsh exclusions that make recovery under the policy virtually impossible, would have been subject to scrutiny by an actual group of persons. A lawful group of persons would have had the opportunity to determine the relative merit and value of the policy before providing its members with the opportunity to purchase it.

38.     In furtherance of their illegal and deceptive acts, the Defendants actually issued the policy to themselves, the "AIG Group Insurance Trust, for the Account of HealthExtras" an alter-ego of the Defendants, with premiums collected for them as the "Policyholder." The Defendants have issued the "Master Policy" to themselves, and refuse to allow their plan "members" access to it. Further, since the "members" are not part of any real group, and the Defendants own and control the "Insurance Trust", the members who are actually paying the premiums or "membership fees" as the Defendants characterize, have no opportunity to communicate with each other about any business practices or unfair claims practices regarding the HealthExtras Accidental Permanent Disability

-10-

Policy. This illegal scheme devised and perpetrated by the Defendants effectively keeps the "members" in the dark and conceals the true nature of the "Master Policy" which the Defendant, National Union uses to wrongfully deny claims.

39.     All of the Defendants' concerted actions in this regard were done to avoid insurance regulation and to disguise the fact that the policy has virtually no value to the actual persons who were and are paying the premiums for it.

40.     Upon information and belief, at some time between 2004 and 2005, the Defendants unilaterally increased Daniel Daniels' premium from $9.95 per month to $12.95 per month. This premium rate increase was made without prior approval of the New Jersey Department of Insurance as required under New Jersey insurance law.

41.     Beginning in February 2009, Defendants again increased the premium to $15.95 per month. This premium rate increase was made without prior approval of the New Jersey Department of Insurance as required under New Jersey insurance law.

42.     Therefore, Daniel Daniels was charged premiums by these Defendants that were illegal under New Jersey statutes and Department of Insurance regulations and was thus proximately damaged by the actions of these Defendants.

## VI. BREACH OF CONTRACT - COUNT ONE

43.     The Plaintiff hereby reincorporates paragraphs 1-42 of this Complaint as if stated herein and pled in full.

44.     Under New Jersey law, insurance contracts are interpreted to comport with the reasonable expectations of the insured.

45.     Based on the representations of the Defendants as described herein, Daniel Daniels

-11-

had a reasonable expectation that the Permanent Total Disability Policy would pay him $1,000,000.00 if became disabled as a result of an accident.

46.    Daniel Daniels paid all required premiums and submitted a claim for benefits under the policy.  Daniel Daniels' Estate fully met all prerequisites and requirements to be entitled to a lump sum benefit payment of $1,000,000.00 pursuant to the terms of the policy.

47.    The Defendant National Union has refused to pay the benefit amounts, as required the HealthExtras Permanent Total Disability Policy.

48.    The refusal of National Union to honor the contract of insurance and pay the Plaintiff's claim constitutes a breach of contract and breach of the insurance policy.

## VII.  EQUITABLE REFORMATION - COUNT TWO

49.    The Plaintiff hereby reincorporates paragraphs 1-45 of this Compliant as if stated herein and pled in full.

50.    An insurance policy can be reformed based upon either mutual mistake or unilateral mistake by one party and fraud or unconscionable conduct by the other.

51.    Based upon the fraudulent representations of Defendants in their marketing material and other correspondence sent to Daniel Daniels that constitute affirmative acts and knowing omissions under New Jersey law, the Plaintiff is entitled to equitable reformation of the insurance contract to cover the loss that resulted in the permanent total disability of Daniel Daniels, as a result of the accident.

52.    Reformation is appropriate because: (a) the insurance contract does not properly express the agreement of the parties or the reasonable expectation of the insured, (b) fraud and/or unconscionable conduct on the part of the Defendants that entitles the Plaintiff to reformation under

New Jersey law, and (c) injustice will result if the contract is not rewritten.

## VIII. INSURANCE BAD FAITH - COUNT THREE

53. The claimant hereby reincorporates paragraphs 1-52 of this Compliant as if stated herein and pled in full.

54. National Union lacked any reasonable basis for denying benefits to the Plaintiff.

55. In denying Plaintiff's claim, National Union knew there was no reasonable basis upon which to deny the claim, and/or acted with a reckless disregard of the lack of a reasonable basis for denying the claim.

56. National Union acted with a reckless indifference to the facts and information submitted by the Plaintiff to support the claim for benefits, including, but not limited to excessive delays in communicating with the claimant, excessive delays in processing the claim, and denying the claim without conducting a reasonable investigation based on all available information.

57. National Union violated New Jersey public policy and N.J. Stat. Ann. § 17:29B-4 by:

    a.    Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

    b.    Refusing to pay the claim submitted by claimant without conducting a reasonable investigation based upon all available information;

    c.    Failing to affirm or deny coverage within a reasonable time after proof of loss statements were completed;

    d.    Not attempting in good faith to effectuate a prompt, fair and equitable settlement of the claim submitted by claimant even though liability had become reasonably clear; and

    e.    Compelling claimant to institute litigation to recover the amount due to her under the insurance policy by offering substantially less than the amount ultimately recovered.

58. National Union's conduct relating to the claim submitted by the Plaintiff was egregious and demonstrated wantonly reckless and/or malicious conduct by an insurance company.

## IX. VIOLATION OF THE NEW JERSEY
## CONSUMER FRAUD ACT (N.J. Stat. Ann. § 56:8-1 et seq.) - COUNT FOUR

59.     The Plaintiff hereby reincorporates paragraphs 1-58 of this Complaint as if stated herein and pled in full.

60.     Defendants' sale and collection of premiums, as described herein, for the "HealthExtras" accidental permanent total disability insurance policy sold to Plaintiff constitutes a violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 et seq., because Defendants' conduct violates the New Jersey insurance statutes and regulations and is an unconscionable commercial practice.

61.     Specifically, the Defendants' conduct violates New Jersey statutes and regulations because, inter alia, the HealthExtras policy was sold as a blanket policy to a group of persons that do not constitute a lawful blanket group.  Moreover, the Defendants' conduct in selling the policy and collecting premiums violates state statutes and regulations because, inter alia, Defendants failed to obtain the proper approvals from the New Jersey Department of Insurance prior to selling the policies and/or collecting premiums and/or raising the premium rates.  Furthermore, this conduct constitutes an unconscionable commercial practice because Defendants knowingly violated these statutes and regulations in order to avoid the scrutiny and oversight that would have come from regulators and a lawful group of policyholders. The Defendants' conduct otherwise violates the New Jersey Consumer Fraud Act because it is and was illegal, deceptive, immoral, unethical, oppressive, fraudulent, unscrupulous and substantially injurious to consumers.

62.     Defendants have violated and continue to violate N.J. Stat. Ann. § 56:8-1 et seq., as they have and continue to collect premiums for the illegal policy.

-14-

63.     Daniel Daniels suffered an ascertainable loss caused by Defendants' fraudulent conduct in that he paid for an illegal policy due to the fact that: (a) the policy was not approved for sale as a blanket policy under New Jersey law; (b) the Master Policy contained extremely restrictive terms, exclusions and definitions of disability which rendered the policy virtually worthless; and (c) Defendants' had not obtained the proper state regulatory approvals prior to marketing and selling the policy.

64.     The Defendants collaborated with each other to market the subject disability policy in a manner that was designed to deceive consumers, including Daniel Daniels.

65.     The Defendants engaged in unlawful conduct as described herein, including but not limited to, unconscionable commercial practices, deception, fraud, and/or misrepresentations; the affirmative knowing concealment and/or suppression of material facts with the intent that Daniel Daniels and others rely upon such concealment and/or suppression; and violations of New Jersey statutes and/or regulations.

66.     Defendants have engaged in unlawful affirmative acts, as described herein, including but not limited to the following:

   a.    Making factually inaccurate statements in connection with the sale of the insurance policy;
   b.    Using misleading and deceptive marketing materials that described the coverage provided by the policy in much broader terms than the coverage actually provided by the policy;
   c.    Making factually inaccurate statements in post-sale materials regarding the terms and benefits of the policy.

67.     Defendants knowingly concealed or suppressed material facts with the intent that Daniel Daniels and others rely upon such concealment and/or suppression as described herein, including but not limited to the following:

-15-

a.   Refusing to provide an accurate description of the terms and benefits provided by the insurance policy in any of the marketing materials while knowingly providing deceptive and misleading descriptions of such terms and benefits;

b.   Refusing to provide a copy of the Master Policy.

68.   Defendants violated N.J. Stat. Ann. § 17:29B-4 (1) & (2) as described herein, including but not limited to the following:

a.   Circulating marketing materials, advertisements and/or other statements, including but not limited to, notices, circulars, pamphlets and/or letters, that misrepresent the terms and benefits of the policy actually issued;

b.   Circulating post-sale materials, including but not limited to, notices, circulars, pamphlets and/or letters, that misrepresent the terms and benefits of the policy actually issued;

c.   Making, publishing, disseminating, circulating and/or placing before the public marketing materials, advertisements and/or other statements, including but not limited to, notices, circulars, pamphlets and/or letters, that contain assertions, representations and/or statements relating to insurance that are/were untrue, deceptive and/or misleading.

69.   The Plaintiff has suffered an ascertainable loss because the insurance policy Daniel Daniels paid for was of far less value than what was promised.

## X. BREACH OF DUTY OF GOOD FAITH
## AND FAIR DEALING - COUNT FIVE

70.   The Plaintiff hereby reincorporates paragraphs 1-69 of this Complaint as if stated herein and pled in full.

71.   The Defendants had a duty of good faith and fair dealing and breached this duty by their concerted deceptive and illegal actions.

72.   Defendants, individually and collectively, knew that they could only sell the subject policy to legal "blanket groups", and that issuing the policy to themselves in the name of "AIG Group Insurance Trust for the Account of HealthExtras" as a purported "Policyholder" was illegal

-16-

as this entity is not an authorized "blanket group" under New Jersey law.

73.     Despite Defendants' collective knowledge, Defendants failed to reveal to Daniel Daniels that their disability policy was illegal, that their premiums were thus illegal and unapproved, and that he had been made part of an illegal "blanket group."

74.     These Defendants had a legal duty to act in good faith and deal fairly with the persons they purported to insure under their policies.

75.     Despite this duty, Defendants sold the illegal insurance coverage to Daniel Daniels and other New Jersey residents and thus breached the duty of good faith and fair dealing. This breach proximately caused damages to Daniel Daniels.

76.     Daniel Daniels and his Estate have been proximately injured as a result of the Defendants' breach of the duty of good faith and fair dealing and are thus entitled to damages proximately caused them by said breach.

## XII. CIVIL CONSPIRACY - COUNT SIX

77.     The Plaintiff hereby reincorporates paragraphs 1-76 of this Complaint as if stated herein and pled in full.

78.     All Defendants engaged in a conspiracy to utilize their efforts to sell a disability insurance policy to Daniel Daniels for their own individual and mutual benefit without fully disclosing to him that the policies being sold to them did not and could not comply with New Jersey law, with said lack of compliance being material information about such policies. Further, this lack of disclosure constitutes an omission of material fact regarding the disability insurance contract.

79.     In the marketing, sale, and administration of the illegal "policies" as issued by National Union, marketed by HealthExtras, and placed with American International Group, Inc.,

-17-

d/b/a Group Insurance Trust, for the Account of HealthExtras, all Defendants agreed and conspired, as described herein, for the purpose of lawful activities by unlawful means, or unlawful activities by lawful means.

80.     Defendants all committed at least one overt act, as described herein, in furtherance of the aims of the agreement and pursuant to a common scheme between them.

81.     As a direct result of Defendants' actions, which constitutes conspiracy, the Plaintiff has suffered damages.

## XII. PUNITIVE DAMAGES
### (N.J. Stat. Ann. § 2A:15-5.9) - COUNT SEVEN

82.     The Plaintiff hereby reincorporates paragraphs 1-81 of this Complaint as if stated herein and pled in full.

83.     The Defendants' intentional actions and knowing omissions as described herein was and is willful and wanton, and was performed in concert and conspiracy with each other in direct a direct and knowing violation of New Jersey law, and as a result of those acts, the Plaintiff is entitled to recover punitive damages in an amount to be determined in a trial of this matter.

## DEMAND FOR JURY TRIAL

84.     Plaintiff hereby demands a jury trial on all claims so triable in this action N.J. CT. R. 1:8-2)(b) and 4:35-1(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

(a)     A judgment finding that Daniel Daniels was disabled as a result of an accident and that the Defendant, National Union breached the insurance contract by denying his claim and that

-18-

the Plaintiff is entitled to the $1,000,000.00 disability benefit indicated in the insurance contract;

(b)  A judgment reforming the insurance contract in equity, finding that Daniel Daniels was disabled as a result of an accident and that the Plaintiff is entitled to the $1,000,000.00 disability benefit indicated in the insurance contract;

(d)  A judgment finding that Daniel Daniels was disabled as a result of an accident and that the Defendant National Union acted in bad faith by denying his claim;

(e)  A judgment that the Defendants violated the New Jersey Consumer Fraud Act in making affirmative misrepresentations and knowing omissions in the marketing and sale of the HealthExtras Accident Disability Policy;

(f)  A judgment that the Defendants violated the New Jersey Consumer Fraud Act in instituting and selling a group accident and disability policy to an illegal group under New Jersey law;

(g)  A judgment that the Defendants violated the New Jersey Consumer Fraud Act in increasing Daniel Daniels' insurance policy premiums in violation of New Jersey law;

(h)  A judgment that the Defendants violated the implied duty of good faith and fair dealing in making affirmative misrepresentations and knowing omissions in the marketing and sale of the HealthExtras Accident Disability Policy;

(i)  A judgment that the Defendants violated the implied duty of good faith and fair dealing in instituting and selling a group accident and disability policy to an illegal group under New Jersey law;

(j)  A judgment that the Defendants violated the implied duty of good faith and fair dealing in increasing Daniel Daniels' insurance policy premiums in violation of New Jersey law;

-19-

(k)     A judgement that the Defendants agreed and conspired, as described herein, for the purpose of lawful activities by unlawful means, or unlawful activities by lawful means constituting civil conspiracy;

(l)     A judgment that due to the Defendants' willful and wanton conduct as described herein, the Plaintiff is entitled to punitive damages;

(m)     A judgment awarding damages, including restitution, actual damages, treble damages, and punitive and exemplary damages, against Defendants in favor of Plaintiff in an amount to be determined by the Court as fair and just given Defendants' wrongful conduct;

(o)     An order awarding Plaintiff reasonable attorneys' fees and expenses, including costs of experts and of suit.

This the ___7___ day of November, 2013.

LAW OFFICE OF DANIEL B. SHAPIRO

_____

Daniel B. Shapiro, Esq.
*Attorney for the Plaintiff*
101 Park Street
Montclair, New Jersey 07042
Telephone:    973-746-8662
Fax:          973-860-4600


HEMMINGS & STEVENS, PLLC


___/s/ Aaron C. Hemmings_____
Aaron C. Hemmings (*pro hac vice to be filed*)
(N.C. State Bar No.: 29810)
*Attorneys for the Plaintiff*
PO Box 90698
Raleigh, NC 27675
Telephone:    919-277-0161
Fax:          919-277-0162

-21-

N.J. CT. R. 4:5-1(b)2) CERTIFICATION OF NO OTHER ACTIONS

I certify that the dispute about which I am suing is not the subject of any other action pending in any other court or a pending arbitration proceeding to the best of my knowledge and belief. Also, to the best of my knowledge and belief no other action or arbitration is contemplated. Further, other than the parties set forth in this complaint, I know of no other parties that should be made a part of this lawsuit. In addition, I recognize my continuing obligation to file and serve on all parties and the court an amended certification if there is a change in the facts stated in this original certification.

N.J. CT. R. 4:5-1(b)2) CERTIFICATION OF NO PERSONAL INFORMATION

I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with Rules 1:38-7(b).

This the 7ᵗʰ day of November, 2013.

Daniel B. Shapiro
*Attorney for the Plaintiff*

-22-



# CIVIL CASE INFORMATION STATEMENT
## (CIS)

Use for Initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1.
**Pleading will be rejected for filing, under *Rule* 1:5-6(c),
if information above the black bar is not completed or
if attorney's signature is not affixed.**

| FOR USE BY CLERK'S OFFICE ONLY |
| --- |
| PAYMENT TYPE: ☐ CK ☐ CG ☐ CA |
| CHG/CK NO.: |
| AMOUNT: |
| OVERPAYMENT: |
| BATCH NUMBER: |

| ATTORNEY/PRO SE NAME **Daniel B. Shapiro, Esq.** | TELEPHONE NUMBER ( 973 ) 746-8662 | COUNTY OF VENUE **Bergen County** |
| --- | --- | --- |
| FIRM NAME (if applicable) **Law Office of Daniel B. Shapiro** | | DOCKET NUMBER (when available) |
| OFFICE ADDRESS **101 Park Street Montclair, New Jersey 07042** | | DOCUMENT TYPE **Complaint** |
| | | JURY DEMAND ☒ YES ☐ NO |

| NAME OF PARTY (e.g., John Doe, Plaintiff) **Robert Zodda, Administrator of the Estate of Daniel Daniels, Plaintiff** | CAPTION **Robert Zodda, Administrator of the Estate of Daniel Daniels v. National Union Fire Insurance Company of Pittsburgh, PA, American International Group, Inc., d/b/a AIG Insurance Trust for the account of Health Extras, Health Extras, Inc., Health Extras, LLC** |
| --- | --- |
| CASE TYPE NUMBER (See reverse side for listing) **505** | IS THIS A PROFESSIONAL MALPRACTICE CASE? ☐ YES ☒ NO IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
| RELATED CASES PENDING? ☐ YES ☒ NO | IF YES, LIST DOCKET NUMBERS |
| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)? ☐ YES ☒ NO | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known) **National Union Fire Insurance Company of Pittsburgh, PA, American International Group, Inc.** ☐ NONE ☐ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP? ☐ YES ☒ NO | IF YES, IS THAT RELATIONSHIP ☐ EMPLOYER-EMPLOYEE ☐ FRIEND/NEIGHBOR ☐ OTHER (explain) _____ ☐ FAMILIAL ☐ BUSINESS |
| --- | --- |

DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?
☒ YES ☐ NO

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:

| ♿ | DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS ☐ YES ☒ NO | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION: |
| --- | --- | --- |
| | WILL AN INTERPRETER BE NEEDED? ☐ YES ☒ NO | IF YES, FOR WHAT LANGUAGE: |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE

Powered by


Printed by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com   800.222.0510    Page 1

**SIDE 2** 

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

### Track I — 150 days' discovery
| | |
|---|---|
| 151 | NAME CHANGE |
| 175 | FORFEITURE |
| 302 | TENANCY |
| 399 | REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) |
| 502 | BOOK ACCOUNT (debt collection matters only) |
| 505 | OTHER INSURANCE CLAIM (INCLUDING DECLARATORY JUDGMENT ACTIONS) |
| 506 | PIP COVERAGE |
| 510 | UM or UIM CLAIM (coverage issues only) |
| 511 | ACTION ON NEGOTIABLE INSTRUMENT |
| 512 | LEMON LAW |
| 801 | SUMMARY ACTION |
| 802 | OPEN PUBLIC RECORDS ACT (SUMMARY ACTION) |
| 999 | OTHER (briefly describe nature of action) _____ |

### Track II — 300 days' discovery
| | |
|---|---|
| 305 | CONSTRUCTION |
| 509 | EMPLOYMENT (other than CEPA or LAD) |
| 599 | CONTRACT/COMMERCIAL TRANSACTION |
| 603N | AUTO NEGLIGENCE - PERSONAL INJURY (non-verbal threshold) |
| 603Y | AUTO NEGLIGENCE - PERSONAL INJURY (verbal threshold) |
| 605 | PERSONAL INJURY |
| 610 | AUTO NEGLIGENCE - PROPERTY DAMAGE |
| 621 | UM or UIM Claim (includes bodily injury) |
| 699 | TORT – OTHER |

### Track III — 450 days' discovery
| | |
|---|---|
| 005 | CIVIL RIGHTS |
| 301 | CONDEMNATION |
| 602 | ASSAULT AND BATTERY |
| 604 | MEDICAL MALPRACTICE |
| 606 | PRODUCT LIABILITY |
| 607 | PROFESSIONAL MALPRACTICE |
| 608 | TOXIC TORT |
| 609 | DEFAMATION |
| 616 | WHISTLEBLOWER/CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES |
| 617 | INVERSE CONDEMNATION |
| 618 | LAW AGAINST DISCRIMINATION (LAD) CASES |

### Track IV — Active Case Management by Individual Judge/450 days' discovery
| | |
|---|---|
| 156 | ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION |
| 303 | MT. LAUREL |
| 508 | COMPLEX COMMERCIAL |
| 513 | COMPLEX CONSTRUCTION |
| 514 | INSURANCE FRAUD |
| 620 | FALSE CLAIMS ACT |
| 701 | ACTIONS IN LIEU OF PREROGATIVE WRITS |

### Centrally Managed Litigation (Track IV)
| | | | | |
|---|---|---|---|---|
| 285 | STRYKER TRIDENT HIP IMPLANTS | 291 | PELVIC MESH/GYNECARE |
| 288 | PRUDENTIAL TORT LITIGATION | 292 | PELVIC MESH/BARD |
| 289 | REGLAN | 293 | DEPUY ASR HIP IMPLANT LITIGATION |
| 290 | POMPTON LAKES ENVIRONMENTAL LITIGATION | 295 | ALLODERM REGENERATIVE TISSUE MATRIX |
| | | 623 | PROPECIA |

### Multicounty Litigation (Track IV)
| | | | | |
|---|---|---|---|---|
| 266 | HORMONE REPLACEMENT THERAPY (HRT) | 281 | BRISTOL-MYERS SQUIBB ENVIRONMENTAL |
| 271 | ACCUTANE/ISOTRETINOIN | 282 | FOSAMAX |
| 274 | RISPERDAL/SEROQUEL/ZYPREXA | 284 | NUVARING |
| 278 | ZOMETA/AREDIA | 286 | LEVAQUIN |
| 279 | GADOLINIUM | 287 | YAZ/YASMIN/OCELLA |
| | | 601 | ASBESTOS |

**If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics."**

**Please check off each applicable category:**   ☐ **Putative Class Action**   ☐ **Title 59**

Powered by 

Printed by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com   800.222.0510   Page 2

Exhibit B

**TOMPKINS, McGUIRE, WACHENFELD & BARRY LLP**
Four Gateway Center, 5th Floor
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-3000
wmcguire@tompkinsmcguire.com
rulsamer@tompkinsmcguire.com
Attorneys for Defendants, National Union Fire Insurance Company of Pittsburgh, Pa. and American International Group, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

CIVIL ACTION NO.

ROBERT ZODDA, Administrator of the
ESTATE OF DANIEL DANIELS,

        Plaintiff,

    v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,
AMERICAN INTERNATIONAL GROUP,
INC., d/b/a AIG INSURANCE TRUST, FOR
THE ACCOUNT OF HEALTHEXTRAS,
HEALTHEXTRAS, INC., HEALTH
EXTRAS, LLC,

        Defendants.

**NOTICE TO DEPUTY CLERK OF THE SUPERIOR COURT OF NEW JERSEY, BERGEN COUNTY, CONCERNING REMOVAL OF STATE COURT ACTION TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

**TO:**    Deputy Clerk, N.J. Superior Court
        Civil Division
        Bergen County Justice Center, Rm. 115
        10 Main Street
        Hackensack, New Jersey 07601-0769

**PLEASE TAKE NOTICE** that attached hereto is a copy of a Notice of Removal pertaining to <u>Robert Zodda, Administrator of the Estate of Daniel Daniels v. National Union Fire Insurance Company of Pittsburgh, Pa., et al.</u>, Docket Number BER-L-8867-13, Superior Court of New Jersey, Law Division, Bergen County, which was filed with the Clerk of the United States District Court for the District of New Jersey on the 20th day of December, 2013.

> **TOMPKINS McGUIRE WACHENFELD & BARRY LLP**
> Attorneys for Defendants, National Union Fire Insurance Company of Pittsburgh, Pa. and American International Group, Inc.
>
> By: _____
> William B. McGuire

Date:  December 20, 2013

2

Exhibit C

**TOMPKINS, McGUIRE, WACHENFELD & BARRY LLP**
Four Gateway Center, 5th Floor
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-3000
wmcguire@tompkinsmcguire.com
rulsamer@tompkinsmcguire.com
Attorneys for Defendants, National Union Fire Insurance Company of Pittsburgh, Pa. and American International Group, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

CIVIL ACTION NO.

ROBERT ZODDA, Administrator of the
ESTATE OF DANIEL DANIELS,

        Plaintiff,

    v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,
AMERICAN INTERNATIONAL GROUP,
INC., d/b/a AIG INSURANCE TRUST, FOR
THE ACCOUNT OF HEALTHEXTRAS,
HEALTHEXTRAS, INC., HEALTH
EXTRAS, LLC,

        Defendants.

---

**NOTICE TO COUNSEL CONCERNING REMOVAL OF STATE COURT ACTION
TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW
JERSEY**

---

**TO:**    Daniel B. Shapiro, Esq.
        Law Office of Daniel B. Shapiro
        101 Park Street
        Montclair, New Jersey 07042

**PLEASE TAKE NOTICE** of the removal of the State Court action captioned <u>Robert Zodda, Administrator of the Estate of Daniel Daniels v. National Union Fire Insurance Company of Pittsburgh, Pa., et al.</u>, Docket Number BER-L-8867-13, from the Superior Court of New Jersey, Law Division, Bergen County, to the United States District Court for the District of New Jersey on the 20th day of December, 2013.

**TOMPKINS McGUIRE WACHENFELD & BARRY LLP**
Attorneys for Defendants, National Union Fire Insurance Company of Pittsburgh, Pa. and American International Group, Inc.

By: _____
William B. McGuire

Date: December 20, 2013

2