<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROBERT ZODDA<br>Administrator of the ESTATE OF DANIEL DANIELS,<br><br>       Plaintiff,<br><br>       v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., et al.,<br><br>       Defendants. | Civil Case No. 13-7738 (FSH)<br><br>**<u>OPINION & ORDER</u>**<br><br>Date: April 21, 2014 |

**<u>HOCHBERG, District Judge:</u>**

      This matter comes before the Court upon Defendant Catamaran Health Solutions, LLC's motion to dismiss (Dkt. No. 38) pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] The Court has reviewed the submissions of the parties and considers the motion pursuant to Federal Rule of Civil Procedure 78.

### I.    BACKGROUND[2]

      This matter arises from the allegedly wrongful denial of the claims of the Estate of Daniel Daniels, through the estate's administrator, Robert Zodda, ("Zodda" or "Plaintiff") under an accident disability insurance policy. Zodda also alleges that Daniels' policy is illegal because it was not issued to a valid blanket group under New Jersey's insurance regulations, leading to the illegal marketing (including allegedly misleading and false advertising) and sale of insurance by the various defendants.

---

[1] The other three defendants in this matter have filed answers to Plaintiff's complaint.

[2] These facts are taken from Plaintiff's complaint (Dkt. No. 1), unless otherwise noted.

Zodda names four defendants in his complaint: Catamaran Health Solutions, LLC f/k/a HealthExtras, Inc. ("Catamaran");[3] HealthExtras, LLC;[4] National Union Fire Insurance Company of Pittsburgh, P.A. ("National Union"); and American International Group, Inc. d/b/a AIG Group Insurance Trust, for the Account of HealthExtras ("AIG"). Zodda asserts the following causes of action: breach of contract, equitable reformation, and insurance bad faith against National Union; violations of the New Jersey Consumer Fraud Act, breach of the duty of good faith and fair dealing, civil conspiracy, and punitive damages against all Defendants.

In the late 1990s, the HealthExtras Defendants established a marketing relationship with several of the nation's banks to get access to their customers' information to market a long term disability insurance product to people in New Jersey and throughout the country. The HealthExtras Defendants initially engaged Reliance National Insurance Company to underwrite its disability coverage product.

Sometime between 1999 and 2001, Daniels received marketing materials from the HealthExtras Defendants featuring Christopher Reeve, which were forwarded by his bank.[5] Zodda alleges that the marketing material Daniels received indicated, *inter alia*, that the HealthExtras program would provide a $1 million benefit to Daniels if he was permanently disabled due to an accident. According to the complaint, Daniels purchased the HealthExtras Accidental Permanent Disability Insurance Policy and paid premiums through 2009 via his bank

---

[3] In the complaint, Zodda does not refer to "Catamaran." Instead, Zodda refers to "Catalyst Health Solutions, Inc.," formerly known as HealthExtras, Inc., but both parties appear to agree that Catamaran is the same entity as HealthExtras, Inc. and Catalyst Health Solutions, Inc.

[4] Zodda refers to Catamaran and HealthExtras, LLC collectively as "HealthExtras."

[5] Mr. Reeve, known for his portrayal of Superman, became paralyzed as the result of an equestrian accident.

credit card. Plaintiff alleges that Daniels never received a copy of the policy that governed claims.

The policy at issue was first underwritten by Federal Insurance Company, a member of the Chubb Group of Insurance Companies, a successor underwriter to Reliance National Insurance. On January 1, 2005, the underwriter was changed to Defendant National Union.

On February 28, 2009, Daniels fell and suffered a massive cerebral hemorrhage, resulting in permanent brain damage. Due to this brain damage, Daniels suffered a permanent loss of speech, inability to communicate, inability to use his arms and legs, loss of cognitive function, and inability to swallow. From February 28, 2009 until he passed away on June 5, 2011, Daniels remained under constant institutional medical care. In January 2013, the Daniels' estate made a claim for disability benefits under the HealthExtras policy. On October 24, 2013, National Union denied the claim alleging that Daniels did not meet the definition of disability under the policy.

Plaintiff also alleges that the policy issued by Defendants is illegal because it does not fall into one of the seven eligible blanket groups authorized by the relevant New Jersey insurance statute, N.J.S.A. § 17b:27-32(a)(1)-(7). Therefore, according to Plaintiff, the policy is against public policy and constitutes an unlawful and deceptive trade practice under the New Jersey Consumer Fraud Act. Plaintiff also alleges that this same conduct caused Defendants to breach their duty of good faith and fair dealing with Daniels.

Plaintiff alleges that Defendants knowingly violated the New Jersey insurance statute to "avoid the policy being issued to an actual group of persons." According to the complaint, if the policy had been issued to a group of persons that was organized for a purpose other than selling insurance, then "the policy, the advertised promises, the excessive premiums, and the broad,

3

harsh exclusions that make recovery under the policy virtually impossible, would have been subject to scrutiny by an actual group of persons." Plaintiff goes on to allege that those hypothetical people would have had the opportunity to determine the relative merit and value of the policy before providing the group's members with the opportunity to purchase it. Instead, Defendants allegedly issued the policy to themselves under the name "AIG Group Insurance Trust, for the Account of HealthExtras," an alleged alter-ego of Defendants.

Plaintiff states that people like Daniels were "members" of the policy group, paid "membership fees," but could not communicate with each other about any unfair business or claims practices. According to the complaint, this structure was designed to keep the "members" in the dark and conceal the nature of the master policy, which National Union allegedly uses to wrongfully deny claims. In short, Plaintiff alleges that Defendants used an illegal insurance blanket group to avoid insurance regulation and disguise the fact that the policy has virtually no value to the persons who were—and are—paying premiums for it.

## II.     STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotations omitted).

When considering a motion to dismiss under *Iqbal*, the Court must conduct a two-part analysis. "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotations omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (internal quotations and alterations omitted).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a 'document *integral to or explicitly* relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal citations omitted) (emphasis in original).

### III. DISCUSSION

Plaintiff asserts four claims against Catamaran: (i) violation of the New Jersey Consumer Fraud Act; (ii) breach of the covenant of good faith and fair dealing; (iii) civil conspiracy; and (iv) punitive damages. Catamaran moves to dismiss all of these causes of action for various reasons. Each cause of action is addressed below.

### a. New Jersey Consumer Fraud Act ("CFA")

Catamaran argues that Plaintiff's CFA claim must be dismissed because it fails to meet the requirements of Rule 9(b) by lumping together the various Defendants and not identifying which allegations relate to each defendant.

Under New Jersey law, "[a] consumer may proceed with a private cause of action against a merchant under the CFA if she can show that the merchant engaged in an 'unlawful practice,' as defined in N.J.S.A. 56:8-2, and that she 'suffer [ed] [an] ascertainable loss . . . as a result of the use or employment' of the unlawful practice." *Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496, 521 (2010) (citing N.J.S.A. § 56:8-19). If a consumer proves (1) an unlawful practice, (2) an ascertainable loss, and (3) a causal relationship between the unlawful conduct and the ascertainable loss, she is entitled to legal and/or equitable relief, treble damages, and reasonable attorneys' fees. *Id*.

Under the CFA, an unlawful practice is "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate." N.J.S.A. § 56:8-2. "An ascertainable loss is a loss that is quantifiable or measurable; it is not hypothetical or illusory." *Lee*, 203 N.J. at 522 (internal quotation marks omitted).

CFA claims are subject to Federal Rule of Civil Procedure 9(b), which requires parties alleging fraud to state the circumstances constituting the fraud "with particularity." Fed. R. Civ. P. 9(b); *see also Frederico v. Home Depot*, 507 F.3d 188, 200-202 (3d Cir. 2007); *F.D.I.C. v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994). To meet this standard, "a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the

defendant on notice of the precise misconduct with which [it is] charged. . . . [T]he plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200 (internal citations and quotation marks omitted).

When multiple defendants are involved the complaint must plead with particularity by specifying the allegations of fraud applying to each defendant. *MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005); *see also John Wiley & Sons, Inc. v. Rivadeneyra*, Civ. No. 13-1085, 2013 WL 6816369, *6 (D.N.J. Dec. 20, 2013) ("[a] fraud claim will be dismissed where a [p]laintiff lumps all defendants together as having engaged in wrongful conduct without specifying which defendant was responsible for which actions" (internal quotation marks and brackets omitted)).

Here, Plaintiff's complaint fails under Rule 9(b) by lumping together two defendants (*i.e.*, Catamaran (formerly known as HealthExtras, Inc.) and HealthExtras, LLC) and by lumping together all four defendants at various points in the complaint. There is not a single allegation directed to Catamaran individually.[6] Indeed, much of the material from the complaint that Plaintiff relies on in opposition to Catamaran's motion refers only to "Defendants." (Dkt. No. 45 at 8-9 (citing Compl., ¶¶ 59-69.) In opposition, Plaintiff argues that the complaint specifically alleges that the HealthExtras Defendants solicited Daniels with misleading and false advertising about the policy, but the text of the complaint does not support Plaintiff's arguments. Instead,

---

[6] On occasion, the Third Circuit has noted that the requirements of Rule 9(b) might be relaxed when the necessary knowledge is within the defendant's exclusive knowledge or control. *See Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989). But even in those situations, "pleaders must allege that the necessary information lies within defendants' control, and their allegations must be accompanied by a statement of the facts upon which the allegations are based." *Id*. Plaintiff has failed to do so in this case. Nor does Plaintiff allege any sort of relationship between Catamaran and HealthExtras, LLC.

the complaint only notes that the HealthExtras Defendants used marking materials featuring Christopher Reeve, alleged that the policy would apply if you were permanently disabled, and touted the policy's $1 million coverage (*see* Compl., ¶¶ 18-21); the complaint never alleges that the HealthExtras Defendants in particular made false or misleading statements. The other allegations Plaintiff seeks to rely on only refer to "Defendants" in general. (Dkt. No. 45 at 9-11 (citing Compl., ¶¶ 36-38, 60-68).) While the Court can ascertain the general outline of Plaintiff's fraud allegations, *i.e.*, using an unauthorized group to intentionally hide the allegedly strict nature of the policy while simultaneously misrepresenting the nature of coverage in advertising material, the Court cannot ascertain what role each individual defendant played in the alleged fraud. That is, there are no individual allegations other than the following: (i) the HealthExtras Defendants advertised the policy; (ii) National Union was the policy underwriter and made representations about the policy to Daniels; and (iii) AIG was the policy holder. But critically, all the allegations of fraud are directed to Defendants as a group.

This is not enough to meet the requirements of Rule 9(b). As such, this claim is dismissed without prejudice.

### b. Breach of the Covenant of Good Faith & Fair Dealing

Catamaran moves to dismiss Plaintiff's breach of the covenant of good faith and fair dealing on a single ground, to wit, that Plaintiff never alleges that Daniels entered into a contract with Catamaran. In response, Plaintiff argues that it alleged that all the Defendants issued the disability policy at issue to themselves in the form of the "AIG Group Insurance Trust, for the Account of HealthExtras," which, according to the complaint, is an "alter-ego of the Defendants." (Compl., ¶ 38.) Plaintiff argues that this claim should not be dismissed because

discovery is necessary to determine what role the HealthExtras Defendants have in the trust and whether Plaintiff has any contractual relationship with those defendants. (Dkt. No. 45 at 12-13.)

"The covenant of good faith and fair dealing is implied in every contract in New Jersey; thus, it is axiomatic that a contract must exist between two parties before a court will infer this covenant." *J.M. ex rel. A.M. v. East Greenwich Tp. Bd. of Educ.*, Civ. No. 07-2861, 2008 WL 819968, at *9 (D.N.J. March 25, 2008).

Zodda does not claim that Catamaran is party to any agreement with Daniels. Instead, he alleges that National Union issued Daniels' policy and that the policy was placed with AIG.[7] Moreover, Zodda concedes that he does not know if there is any contract between Daniels and either of the HealthExtras Defendants. (Dkt. No. 45 at 12-13.) Indeed, Zodda does not even know what role, if any, HealthExtras has in the AIG trust. (*Id.*) Because Zodda does not plead that Catamaran has a contract with Daniels, his claim for breach of the covenant of good faith and fair dealing is dismissed.

### c. Civil Conspiracy

Catamaran argues that Zodda's civil conspiracy claim fails because it is derivative of his CFA claim. Therefore, it fails for the same reasons noted above. Catamaran also argues that Zodda's allegations fail to meet the requirements of Rule 8 because they do not contain enough factual matter to support a claim for civil conspiracy. Instead, Catamaran argues the complaint only contains bare conclusory allegations about the Defendants in general.

---

[7] While Plaintiff argues that the "AIG Group Insurance Trust, for the Account of HealthExtras" is an alter ego of the Defendants, he does not provide any factual allegations in the complaint to support this legal conclusion. *See*, *e.g.*, *Luppino v. Mercedes-Benz USA, LLC*, Civ. No. 09-5582, 2013 WL 6047556, at *6 (D.N.J. Nov. 12, 2013); *Wrist Worldwide Trading GMBH v. MV Auto Banner*, Civ. No. 10-2326, 2011 WL 1321794, at *4-*6 (D.N.J. Mar. 30, 2011); *Chen v. HD Dimension, Corp.*, Civ. No. 10-863, 2010 WL 4721514, at *3-*4 (D.N.J. Nov. 15, 2010).

In New Jersey, a civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177 (2005).

"[T]o succeed on a civil conspiracy claim, the plaintiff must assert an underlying tort claim." *Trico Equip., Inc. v. Manor*, Civ. No. 08-5561, 2011 WL 705703, at *8 (D.N.J. Feb. 22, 2011). If there is no valid underlying tort, a claim for civil conspiracy should be dismissed. *Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 533 (D.N.J. 2011) ("Under New Jersey law, a claim for civil conspiracy cannot survive without a viable underlying tort, and because all of Plaintiffs' tort claims fail as a matter of law, Plaintiffs' civil conspiracy claim must be dismissed.").

As explained above, the Court is dismissing Plaintiff's CFA claim. Because Plaintiff's civil conspiracy claim is derivative of its CFA claim, the Court will also dismiss Plaintiff's civil conspiracy claim.[8]

### d. Punitive Damages

Catamaran argues that Plaintiff's punitive damages count should be dismissed because punitive damages are not a distinct cause of action. This court agrees. It is well settled that that the general rule is that there is not cause of action for "punitive damages." *See*, *e.g.*, *Incorvati v. Best Buy Co., Inc.*, Civ. No. 10-1939, 2010 WL 4807062, at *12 (D.N.J. Nov. 16, 2010). This count will be dismissed from the complaint, but the Court notes that Plaintiff has preserved its

---

[8] The Court need not address Catamaran's other arguments.

right to argue for punitive damages as a remedy if allowed under the remaining causes of action. *See* N.J.S.A. § 2A:15-5.11.

Catamaran also argues that Plaintiff fails to plead enough facts to support a finding of punitive damages. Under the New Jersey Punitive Damages Act, "[p]unitive damages may be awarded to the plaintiff only if the plaintiff proves, by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J.S.A. § 2A:15-5.12. Here, Plaintiff has made such allegations in the Complaint and the possibility of punitive damages survives a motion to dismiss. (*See* Dkt. No. 1, ¶ 83 (alleging that Defendants knowingly violated New Jersey law).)

Moreover, Plaintiff need not prove their claim for punitive damages (a remedy) at the motion to dismiss stage. There is no heightened pleading requirement under Rule 8, or otherwise, that is aimed at the remedies sought in a matter. *See Jones v. Francis*, Civ. No. 13-04562, 2013 WL 5603848, at *2 (D.N.J. Oct. 11, 2013) ("The excerpt from the Punitive Damages Act upon which Defendants rely is, quite simply, an evidentiary inquiry, since it defines the quantum of proof [Plaintiffs] must present on the issue of punitive damages. Under the Federal Rules of Civil Procedure, however, an evidentiary standard is not a proper measure of whether a complaint fails to state a claim." (internal citation and quotation marks omitted)).

## IV.     CONCLUSION & ORDER

For the reasons stated above,

**IT IS** on this 21st day of April, 2014,

11

**ORDERED** that Catamaran Health Solutions, LLC's motion to dismiss (Dkt. No. 38) is **GRANTED**; and it is further

**ORDERED** that Counts IV (CFA), V (breach of duty of good faith and fair dealing), and VI (civil conspiracy) are **DISMISSED WITHOUT PREJUDICE** with respect to Catamaran; and it is further

**ORDERED** that Count VII (punitive damages) is **DISMISSED WITH PREJUDICE**; and it is further

**ORDERED** that Plaintiff may file an amended complaint addressing the deficiencies discussed herein within **30 days** of this Order.

**IT IS SO ORDERED.**

  **/s/ Hon. Faith S. Hochberg**
Hon. Faith S. Hochberg, U.S.D.J.